## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| RENEE YOUNG, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL,[1] ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) | No. 4:15 CV 1866 DDN |

## MEMORANDUM

This action is before this court for judicial review of the final decision of the defendant Commissioner of Social Security finding that plaintiff Renee Young is not disabled, and, thus, not entitled to Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, or to Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.* The parties consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Commissioner is affirmed.

## BACKGROUND

Plaintiff, who was born on February 18, 1971, filed her applications for SSI and DIB on May 14, 2013 and May 23, 2013, respectively. (Tr. 156-70). She alleged the disabling conditions of agoraphobia, panic attacks, auto-immune disorder, arthritis pain,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

chronic pain, and post-traumatic stress disorder ("PTSD"), with an alleged onset date of December 21, 2012. (Tr. 185, 201). The agency initially denied her claims, and she requested a hearing before an administrative law judge ("ALJ"). (Tr. 95-110). After an administrative hearing and careful consideration of the entire record, the ALJ found that plaintiff was not disabled under the Act. (Tr. 27).

Plaintiff filed a timely request for review of this decision with the Social Security Appeals Council and was denied on October 9, 2015. (Tr. 12-15). Accordingly, plaintiff has exhausted all administrative remedies and the ALJ's decision stands as the final decision of the Commissioner subject to judicial review.

**Medical Record and Evidentiary Hearing**

Plaintiff began to see M. Sameer Arain, M.D., approximately every four weeks from January 16, 2012 to July 19, 2013, after which she visited him approximately every eight weeks. (Tr. 299-313, 352-63). Plaintiff's last visit with Dr. Arain on record was March 7, 2014. (Tr. 363). During this time, Dr. Arain's record shows that plaintiff displayed good eye contact, normal psychomotor activities, and appropriate and cooperative behavior. *Id*. Plaintiff's speech was spontaneous and coherent, both the rate and the volume of which were normal. *Id*. Her affect was reported as generally restrictive until May 24, 2013, after which it was reported as generally reactive, except on March 7, 2014. *Id.* Plaintiff displayed linear and logical thought processing and fair insight and judgment. *Id.* She also consistently appeared alert and oriented and did not display manic behavior or any episode of psychosis. *Id.* Dr. Arain's notes documented relatively mild mood fluctuations and limitations, where plaintiff reported feeling "[a] little better," "fair," "okay," "so-so," "better," and sometimes somewhat anxious or depressed. (Tr. 25, 300, 302-09, 311-12, 357-58, 362-63).

On May 7, 2012, plaintiff reported having anxiety and having cut her wrist superficially a few weeks prior, but she reported better sleep and her affect was reactive. (Tr. 313). She had counseling in June, September, and October 2012. (Tr. 303, 305-06). Plaintiff reported having problems going into public and going out in September and

October 2012. (Tr. 305-06). She reported severe headaches and erratic sleep in October 2012. (Tr. 306).

In June and July 2013, plaintiff reported a high spend-down on her Medicaid and could not pay her copayment. (Tr. 357-58). She had no money to see her primary care provider. *Id.* She described her mood as fair and reported anxiety in crowds or public places. *Id.* In July, she reported feeling exhausted and reported her dog was dying. (Tr. 358). She reported having a panic attack when she had to take the dog to the emergency room, but her mood was described as stable with no manic behaviors or psychosis. *Id.*

An internal medicine consultative examination ("CE") was performed at the request of the Social Security Administration on July 13, 2013, with Dr. Heather Cha. (Tr. 314). Based on the Dr. Cha's observations and physical exam findings, as well as the plaintiff's statements and medical history, Dr. Cha opined plaintiff was likely to have agoraphobia, panic attacks, PTSD, abdominal pain and presumed iron deficiency anemia. (Tr. 318). The doctor opined that plaintiff was likely able to perform and sustain work-related functions such as sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, and traveling despite any functional limitations. *Id.* Dr. Cha determined that approximately half of plaintiff's allegations were not supported by evidence, and the doctor found that plaintiff was not believable in terms of the degree of pain and distress she expressed during the visit. (Tr. 318-22).

Plaintiff had nine one-hour sessions of counseling therapy with Kay Morrison, LCSW, from September 29, 2013, to June 9, 2014. (Tr. 385-93). Ms. Morrison conducted an initial assessment of plaintiff on September 29, 2013, and came up with a treatment plan on October 7, 2013. (Tr. 372-84). Ms. Morrison noted that at the initial assessment, plaintiff was unable to have any eye contact during the session; her hands trembled; and she had pressured speech, loose associations and flat affect. *Id.* Ms. Morrison also noted that plaintiff's memory appeared good and she was cooperative. *Id.*

After initial assessment, Ms. Morrison issued plaintiff a provisional diagnosis of panic disorder, agoraphobia, major depressive disorder, PTSD by history, and social anxiety disorder. (Tr. 382). Two problems were addressed in the treatment plan. (Tr. 372-

3

377). The first was plaintiff's fear of being in an environment that plaintiff believed might trigger intense anxiety symptoms (panic), such as leaving home or being in a crowd of people in a restaurant or enclosed environment. (Tr. 372). The second problem included different aspects and levels of sadness, irritability, restlessness, and agitation. (Tr. 375).

Ms. Morrison's notes show that, during the counseling sessions, Ms. Morrison instructed plaintiff on deep breathing techniques, processing her feelings, and journaling and encouraged her to participate more in household chores and make social plans with her partner outside of the house. (Tr. 385, 387-90). By October and November 2013, plaintiff showed improvement in her eye contact and affect, reported improvement in her mood, and reported having hope about her future. (Tr. 387-89). By April 2014, plaintiff reported going to a store and appeared to feel better, viewing her outing as successful although she didn't stay at the store long. (Tr. 391). In May 2014, plaintiff attended a street celebration and went to a bar and restaurant, and relayed that she was proud of herself that she was able to socialize in public although she did not enjoy it. (Tr. 392).

Ms. Morrison filled out a mental residual functional capacity questionnaire ("MRFC") on May 20, 2014, after eight sessions. (Tr. 366-71). She diagnosed plaintiff with major depression, panic disorder with agoraphobia, and PTSD. *Id.* While Ms. Morrison noted that plaintiff had taken some small steps in getting better, she observed that plaintiff appeared to regress at times when anxiety worsened and observed generally that plaintiff still appeared overwhelmed with daily anxiety and mood disturbance. *Id.*

Approximately one month later, on June 14, 2014, psychologist Marva Robinson performed a consultative examination and noted that plaintiff appeared appropriately dressed and groomed. (Tr. 398-403). Plaintiff displayed average intelligence and normal insight, judgment, speech, thought process, and concentration. (Tr. 398-99). (Tr. 26, 394-403). Dr. Robinson noted that plaintiff was cooperative; she had unremarkable motor activity; she maintained fair eye contact; she sat appropriately in her chair and gave coherent, spontaneous reports; and her memory was intact. *Id.* Dr. Robinson opined that plaintiff could understand, remember, and carry out instructions. (Tr. 401). Dr. Robinson

4

opined that plaintiff had no limitations in interacting with supervisors, but was moderately limited in interacting with co-workers and markedly limited in interacting with the public and responding to work changes. (Tr. 402). Dr. Robinson further stated that plaintiff had panic attacks that were intensified by social settings. *Id.*

**ALJ's Decision**

The ALJ found that plaintiff meets the insured status requirements of the Act through December 31, 2012; has not engaged in substantial gainful activity since December 21, 2012; and has the following severe impairments: general anxiety disorder and panic disorder with agoraphobia. (Tr. 22). The ALJ also found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 23).

The ALJ then proceeded to assess plaintiff's residual functional capacity ("RFC") and found that plaintiff has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> limited to simple, repetitive and routine tasks with superficial contact with co-workers, supervisors, and the public, working with things rather than people, low stress environment defined as making only occasional decisions and occasional changes in routine in the normal work setting.

(Tr. 24).

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. (Tr. 25). The ALJ pointed out that plaintiff's and her mother's statements supported her allegations, where plaintiff described having a limited lifestyle with problems cooking, eating, dressing, and bathing, and where her mother indicated that plaintiff had problems talking, understanding, following instructions, completing tasks, getting along with others, remembering, and concentrating. (Tr. 25, 186-96, 209-16).

However, the ALJ noted that the overall treatment history and medical records failed to support plaintiff's allegations. (Tr. 25). Dr. Arain noted during his examinations of plaintiff in 2012 and 2013 that plaintiff had a blunted or restricted affect but was oriented with normal psychomotor activity and fair to good grooming. (Tr. 25, 299-313, 352-63). Plaintiff was cooperative and made good eye contact. *Id.* She had appropriate behavior with coherent, normal speech and her thought process was linear and logical. *Id.* Dr. Arain also noted that plaintiff had not scheduled any counseling yet. (Tr. 25, 307). Plaintiff told Dr. Arain that her mood was "fair" on January 10, 2013; that she was "so so" on May 24, 2013, that her mood was "better" on March 7, 2014. Dr. Arain noted plaintiff's mood was stable on January 3, 2014. (Tr. 25, 309, 356, 362, 363).

Examining all the medical evidence, the ALJ found that although plaintiff had some signs of severe psychiatric disorders, she improved with consistent treatment and that most of the time examiners observed that she maintained her grooming, she cooperated, and she remembered events. (Tr. 26).

The ALJ gave only some weight to Dr. Robinson's assessment that plaintiff had marked limitations in her ability to interact appropriately with the public and to respond appropriately to unusual work situations. *Id.* The ALJ noted that plaintiff herself did not indicate having significant problems getting along with others and that she managed to interact well enough with the consultative examiner, whom she had not met before. (Tr. 26, 186-96, 394-403). The ALJ also noted that plaintiff did not require treatment indicative of the limitations assessed in these areas. (Tr. 26).

The ALJ gave little weight to Ms. Morrison's opinion that plaintiff appeared overwhelmed with daily anxiety and mood disturbance that prevented her from leaving her home on a regular, predictable basis. (Tr. 26). The ALJ pointed out that plaintiff's symptoms improved during sessions with Ms. Morrison, and Dr. Arain noted that her mood was stable in January 2014. (Tr. 26, 372-93, 352-65). The ALJ also noted that plaintiff had not been recommended treatment indicative of the severity of symptoms Ms. Morrison suggested. (Tr. 26). In other words, the alleged severity of the limitations was inconsistent with the conservative treatment Ms. Morrison prescribed.

The ALJ found that plaintiff was unable to perform any of her past relevant work but, considering plaintiff's age, education, work experience, and RFC, determined there were jobs that exist in significant numbers in the national economy that plaintiff could perform. (Tr. 26-27). Consequently, the ALJ concluded that plaintiff was not disabled under the Act. (Tr. 27-28).

## DISCUSSION

Plaintiff argues that the ALJ's decision was not supported by substantial evidence. (ECF No. 23). Specifically, plaintiff asserts that (1) the ALJ's decision lacked any expert assessment of her RFC, and (2) the ALJ erred by giving "some weight" to Dr. Robinson's opinion and giving "little weight" to Ms. Morrison's opinion.

**Standard of Review and Statutory Framework**

In reviewing the ALJ's determinations, this court's inquiry is limited to whether "the Commissioner's denial of benefits complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014). Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). The court must affirm the Commissioner's decision as long as substantial evidence in the record supports it, even though substantial evidence in the record might support a contrary outcome as well. *Id.*

To be entitled to benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Under the authority of the Act, the Social Security Administration has established a five-step analysis to determine whether an individual is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a).

At Step One, the Commissioner determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, she is not disabled. If not, the analysis goes to Step Two: to decide whether the claimant has a severe medically determinable impairment or a combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, she is not disabled. If so, the analysis proceeds to Step Three, to decide whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. If it does not, the analysis proceeds to Step Four.

At Step Four, the ALJ determines the claimant's RFC and whether the claimant has the RFC to perform the requirements of her past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(f), 416.920(f). An individual's RFC is her ability to do work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 404.1545. In making this finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945; SSR 96-8p. If the claimant has the RFC to do her PRW, the claimant is not disabled. If the claimant is unable to do any PRW or does not have any PRW, the analysis proceeds to Step Five.

At Step Five, the ALJ must determine whether the claimant is able to do any other work considering her RFC, age, education and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the Social Security Administration is able to prove that other work exists in significant numbers in the national economy that the claimant can do, given her RFC, age, education, and work experience, the claimant is not disabled. 20 C.F.R. §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

**The RFC is Supported by Substantial Evidence**

In this case, the ALJ followed a two-step process in determining plaintiff's RFC. (Tr. 24). The ALJ first determined whether there were underlying medically determinable physical or mental impairments that could reasonably be expected to produce plaintiff's pain or other symptoms, the answer to which was in the affirmative. Then the ALJ evaluated the intensity, persistence, and limiting effects of plaintiff's symptoms to determine the extent to which they limit her functioning, and she found them not entirely credible. (Tr. 24)

The ALJ is "required to consider at least some supporting evidence from a medical professional" in order to properly determine a claimant's RFC. *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2011) (quoting *Lauer v. Apfel*, 245 F. 3d 700, 704 (8th Cir. 2001)). In determining plaintiff's RFC, the ALJ considered the medical records and opinions from all three medical professionals plaintiff had seen, together with plaintiff's allegations, her mother's reports, and all the other relevant evidence.

Plaintiff alleged that she had a limited lifestyle, had difficulty getting out of the home and being in public around crowds of people, and experienced severe depression. The ALJ acknowledged that her impairments could reasonably be expected to cause the alleged symptoms but found the severity was not fully supported by the overall treatment history and medical records. The ALJ's decision is supported by substantial evidence.

Despite plaintiff's description of her limited lifestyle and her mother's reports in support of it, Dr. Arain's notes suggested otherwise. He observed that plaintiff displayed good eye contact, normal psychomotor activities, and appropriate and cooperative behavior; plaintiff's speech was spontaneous and coherent; and plaintiff's mood and affect were generally restricted at first but gradually became generally reactive.[2] (Tr. 25, 186-96, 209-16, 363). Meanwhile, during the same period of time that Dr. Arain's

---

[2] A restricted affect is one that does not change, or has limited variation in emotional expression, while a reactive affect shows a normal responsiveness and range of emotions in response to external events or circumstances. *See* Cheryl Evans, Mental Status Examination, 4 (Aug. 2002), http://lib-wind.mohawkcollege.ca/documents/nursing/mental-status-exam.pdf.

medical notes described plaintiff's mood as stable, with relatively mild fluctuations and limitations, plaintiff began seeing Ms. Morrison. (Tr. 25, 300, 302-09, 311-12, 357-58, 362-63, 366-93). Ms. Morrison stated in her MRFC questionnaire that plaintiff had taken some small steps in getting better, despite regress at times. (Tr. 366-71).

Plaintiff argues that "doing well for the purpose of a treatment program has no necessary relation to a claimant's ability to work or to claimant's work-related functional capacity." *Hutsell*, 259 F.3d at 712. However, the law in the Eighth Circuit is clear that "if an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Mabry v. Colvin*, 815 F.3d 386, 91-92 (8th Cir. 2016). Moreover, the ALJ did not exclusively rely on plaintiff's progress in determining her RFC. He simply considered it as a factor affecting the conclusion. Both Dr. Arain's and Dr. Morrison's treatment notes from 2012 through 2014 consistently displayed that plaintiff's condition improved and stabilized with treatment and medication. (Tr. 299-313, 352-63, 385-93).

The ALJ properly gave Ms. Morrison's opinion "little weight." At the time Ms. Morrison prepared the MRFC, she had seen plaintiff eight times, with large gaps between visits. (Tr. 367). Ms. Morrison was unable to evaluate plaintiff's work abilities. (Tr. 369). However, she opined that while plaintiff had taken some small steps in getting better, she appeared to regress at times. (Tr. 367). Despite noting that plaintiff had improved eye contact in her treatment notes (Tr. 389-90), Ms. Morrison opined that plaintiff had very poor eye contact in her MRFC. (Tr. 367). Also, the progress Ms. Morrison reported in her treatment notes was inconsistent with the severity of symptoms suggested in the MRFC, (Tr. 366-93), which entitled her opinion to less deference than it "would receive in the absence of inconsistencies". *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir.2012).

The ALJ also lawfully gave Dr. Robinson's opinion "some weight" because substantial evidence supported the conclusion that plaintiff was not as restricted in her ability to interact appropriately with the public and to respond appropriately to unusual work situations as Dr. Robinson assessed. In 2014, plaintiff went to a store with her girlfriend, attended a street celebration, with friends and went to a restaurant/bar. (Tr.

391-92). Plaintiff reported that she did not enjoy socializing in public, but she was able to do it. Plaintiff did not indicate having significant problems getting along with others when she was able to relate to her girlfriend and several other friends, and interacted well with the consultative examiner, who was a total stranger. (Tr. 26, 392, 396).

In support of the weight given to both opinions, the ALJ noted that Dr. Cha, a consultative examiner, did not find plaintiff believable in terms of the degree of pain and distress she expressed during the visit. (Tr. 314, 318-22).

Additionally, the ALJ noted that plaintiff did not require more aggressive treatment, which would be expected by the severity of symptoms or limitations alleged. (Tr. 26). Plaintiff argues that there is no indication more aggressive treatment is appropriate, is necessary, or would improve her condition, nor is there any requirement for inpatient psychiatric treatment to prove a condition. However, she does not cite any authority for this assertion. Determination of RFC is not based on any single aspect of the record, but all the evidence in the record as a whole, including "the medical records, observations of treating physicians and others, and an individual's own description of her limitations." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002). In determining RFC, the ALJ considered the opinions of all the doctors involved, his independent review of the medical record, plaintiff's own allegations and descriptions and other reports. Substantial evidence supports the ALJ's determination that plaintiff had the RFC to perform a full range of work at all exertional levels but with nonexertional limitations.

Contrary to plaintiff's argument, the ALJ's RFC finding is supported by substantial evidence. (Tr. 25-26, 363). To accommodate plaintiff's mild mood fluctuations and social anxiety, the ALJ's RFC limited plaintiff to simple, repetitive, routine, and low-stress work and strictly limited her social interactions to only superficial contact with people. (Tr. 24).

The record as a whole indicates that plaintiff's symptoms improved with treatment, plaintiff was able to leave the home for social events and medical appointments, and plaintiff was stabilizing. The ALJ, therefore, did not err in concluding that plaintiff was not disabled as defined by the Act.

Accordingly, the decision of the Commissioner is affirmed. A separate Judgment Order is signed herewith.

S/ David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on May 2, 2017.